UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH TUINSTRA and AMANDA TUINSTRA,<br><br>      Plaintiffs,<br>v.<br><br>BONNER COUNTY; DONNA GOW; JOHN/JANE DOES I–X,<br><br>      Defendants. | Case No. 2:21-cv-00074-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendants Bonner County and Donna Gow's Motion to Dismiss for failure to state a claim. Dkt. 8. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court GRANTS the motion but provides an opportunity for Plaintiffs Joseph and Amanda Tuinstra to amend their Complaint.

## II. BACKGROUND

The Tuinstras are husband and wife residing in Bonner County, Idaho. They filed this lawsuit alleging violations of their constitutional rights under the Fourth, Fifth, and

Fourteenth Amendments to the United States Constitution and Article I, section 17, of the Idaho Constitution. Dkt. 1. The allegations arise from an incident wherein two unknown employees of the Bonner County Assessor's Office entered the Tuinstras' attached garage without a warrant, permission, or an easement. *Id.* at 2. Jane Does I and II are those unknown employees.

At around 11:00 a.m. on November 13, 2019, the Tuinstras heard a noise in their attached garage. Startled by the noise and thinking there was a burglar in their garage, Amanda picked up her two-year-old son and Joseph "grabbed his pepper spray and his phone" to confront whoever it was. *Id.* ¶ 10. Their house is not near other residences and has two "No Trespassing" signs at the entrance of their driveway.

When he got outside, Joseph "saw an unoccupied vehicle with what appeared to be a worn-out Bonner County emblem parked near the rear of his house." *Id.* ¶ 12. He then "peeked into the garage," "saw two women in the back of the garage near the garage-entry door into the house," "entered the garage from the driveway, recording the encounter on his phone," and observed two women wearing badges who identified themselves as Bonner County employees from the Assessor's Office. *Id.* ¶¶ 13–14. They stated they were there to perform measurements to put on the tax rolls and admitted that they did not knock on the front door before entering the garage. Joseph asked them to leave and to ask for permission next time. The two employees left.

The Tuinstras later sent a letter to the Board of Bonner County Commissioners complaining about the incident and making certain demands. *See id.* ¶¶ 7, 41. On the date of the incident, Gow was the acting Bonner County Assessor. After the incident, Gow

uploaded a post on social media, defending her employees' conduct and stating that the Assessor's Office enters people's property all the time as part of their job. *Id.* ¶ 29. Jane and John Does III through X are unknown Defendants "whose conduct may be related to the training of the Bonner County Assessor or its employees, and/or the determination of real property assessments following [the Tuinstras'] letter to the Board of Bonner County Commissioners on or about December 30, 2019." *Id.* ¶ 7. They allegedly "instigated, promoted or participated in retaliatory conduct following the lodging of [the Tuinstras] complaints to the Defendants Bonner County and Gow." *Id.* ¶ 9. This retaliatory conduct was "a substantial and unreasonable increase in their assessment and property taxes," incomparable to the treatment of their neighbors, who did not receive such increases. *Id.* ¶ 41.[1]

Citing federal and Idaho law, the Tuinstras assert four causes of action: (1) an illegal search under the Fourth Amendment; (2) a *Monell* claim[2] for failure to train or having a policy, custom, or practice in deliberate indifference of civil rights; (3) an illegal search in violation of Article I, section 17, of the Idaho Constitution; and (4) a retaliatory taking in violation of the Fifth Amendment. *See generally id.*

As for damages, the Tuinstras seek compensation for their emotional distress from the incident, costs associated with installing a gate across their driveway, costs related to

---

[1] The Tuinstras appealed their tax assessment. Bonner County denied their appeal without explanation or reason. They then filed an appeal with the Tax Board, which heard their case in November 2020. Dkt. 1, ¶ 45.

[2] *See generally Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

installation of an alarm system, and all other damages to be determined at trial. They also seek declaratory relief requiring Bonner County to implement training and policies to abide by the Fourth and Fourteenth Amendments, a recission of the 2020 tax assessment, and their attorneys' fees and costs. Lastly, they demand a jury trial. *Id.* at 11–12.

Bonner County and Gow have filed the instant Motion to Dismiss. Dkt. 8. In it, they raise various perceived problems with the Tuinstras' Complaint ranging from its form to aspects of its substance. *See generally id.* Instead of amending their Complaint, the Tuinstras have opted to defend it. Dkt. 9. Bonner County and Gow have filed a Reply, and the matter is ripe. Dkt. 11.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). In deciding whether to grant a motion to dismiss, the court must accept as true all well-pled factual allegations made in the pleading under attack. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

# IV. ANALYSIS

Some of the arguments for dismissal are persuasive; others are not. The Court will address the arguments one by one. Ultimately, the Court will dismiss the Complaint based on the prohibition against shotgun pleading, but the Court will provide the Tuinstras an opportunity to amend their dismissed Complaint.

## A. Shotgun Pleading

First, Bonner County and Gow contend that the Complaint employs the improper form of "shotgun pleading." "A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). "The self-evident purpose of these rules is to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading." *Id.* (cleaned up). "These rules were also written for the benefit of the Court, which must be able to determine which facts support which claims, and whether the plaintiff has stated any claims upon which relief can be granted, and whether evidence introduced at trial is relevant." *Id.* (cleaned up). Shotgun pleadings are countrary to the Federal Rules of Civil Procedure, corrosive to the adversarial process, and consume courts' already scarce judicial resources. *See id.* Courts consequently "have little tolerance for them." *Id.*

The Eleventh Circuit has identified four common types of shotgun pleading. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). "The most common type . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all

that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. "The next most common type" is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. A third category is "not separating into a different count each cause of action or claim for relief." *Id.* at 1323. Lastly, there is "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

In *Destfino v. Reiswig*, the Ninth Circuit affirmed the dismissal of a complaint based on shotgun pleading, explaining that the plaintiffs failed to correct their "shotgun pleading to state clearly how each and every defendant is alleged to have violated plaintiffs' legal rights" where they continued "to make 'everyone did everything' allegations." 630 F.3d 952, 958 (9th Cir. 2011) (cleaned up).

Here, Bonner County and Gow argue that the Complaint should be dismissed because it employs the first type and fourth type of shotgun pleading identified by the Eleventh Circuit. Although the Tuinstras' four claims are discernible, the Court agrees that who each claim is against is not clear. In other words, the fourth type of shotgun pleading is a problem here. On the other hand, the first type of shotgun pleading is not a problem here because the incorporation of all the preceding paragraphs in each claim does not confuse the claims and is necessary to state the claims because of how interrelated they are. For example, the *Monell* claim requires a constitutional violation, which in turn necessitates alleging what is contained in the first cause of action.

In short, while the Complaint is not as problematic as Bonner County and Gow

suggest, it does not give the Defendants fair notice of which claim is against whom. *See*

*Harris v. Cnty. of San Diego.*, No. 18-cv-924-BTM-AHG, 2019 WL 6683367, at *6 (S.D.

Cal. Dec. 5, 2019) (dismissing a complaint, in part, because the pleading "indiscriminately

intertwines the defendants into each cause of action and thus fails to give any of them fair

notice" (cleaned up)). The Complaint must be dismissed for this reason and this reason

alone.[3]

## B. Gow—Official Capacity and Personal Capacity

Gow and Bonner County next ask whether Gow is being sued in her official or

personal capacity. The caption of the Complaint states that Gow is being sued "as an

employee of Bonner County and in her individual capacity." Dkt. 1, at 1. To determine the

capacity in which a defendant is sued, courts should examine the nature of the proceedings.

*See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Where a plaintiff is seeking

damages against a state official, a strong presumption is created in favor of a personal-

capacity suit because an official-capacity suit for damages is barred. *See Mitchell v.*

*Washington*, 818 F.3d 436, 442 (9th Cir. 2016). On the other hand, state officials may be

sued in their official capacity for injunctive relief. *Hartmann v. Cal. Dep't of Corr. &*

*Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013).

The Court considers Gow's official capacity first and then her personal capacity.

---

[3] Bonner County and Gow similarly assert that the Tuinstras "utterly fail to articulate which Defendants allegedly violated their right under Article I, § 17 of the Idaho Constitution." Dkt. 8-1, at 3. The Court agrees that this presents a problem. If they wish to proceed, the Tuinstras must specifically state who this claim and their other claims are against, so each Defendant has fair notice.

*1. Official Capacity*

Here, the Tuinstras seek damages and injunctive relief against Bonner County and Gow. Based on the above binding precedent, the Tuinstras cannot seek damages against Gow in her official capacity, but they could seek injunctive relief. Because of this, Gow and Bonner County assert that suing Gow in her official capacity would be redundant due to the Tuinstras' *Monell* claim against Bonner County. They have a point.

The Supreme Court has explained, "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky*, 473 U.S. at 167 n.14. Ninth Circuit courts have echoed this refrain. *E.g.*, *Hillblom v. Cnty. of Fresno*, 539 F. Supp. 2d 1192, 1202 (E.D. Cal. 2008) (noting that "the officer is a redundant defendant and may be dismissed"); *Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997) ("[W]hen both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed." (citing *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996)).

Accordingly, it appears that suing Gow in her official capacity would be redundant as it relates to injunctive relief. The claims are therefore dismissed as to Gow in her official capacity.

*2. Personal Capacity*

Gow and Bonner County then offer several reasons why the Tuinstras have failed to state a claim against Gow in her personal capacity. Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under

color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Liability in a personal-capacity suit can be demonstrated by showing that the official caused the alleged constitutional injury. *See id*. at 166.

First, Bonner County and Gow assert that it is indeterminable which claims are against Gow. The Court agrees with this proposition as already noted. The Tuinstras claims need to be clearer regarding who they are against to state a claim against Gow.

Next, Bonner County and Gow argue that the certain allegations are too conclusory because they "fail to identify the specific 'social media' post or comment" that Gow uploaded. Dkt. 8, at 8. Some of those allegations are that Gow condoned the two employees' actions and uploaded a post on social media, defending her employees' conduct and stating that the Assessor's Office enters people's property all the time as part of their job. Dkt. 1, ¶ 29. This argument, however, misstates the pleading standard under Federal Rule of Civil Procedure 8. Pleading rules do not require as much specificity as Bonner County and Gow suggest because only legal conclusions are stricken, whereas these allegations are factual and taken as true. *See Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) (per curiam) ("Federal pleading rules call for a short and plain statement of the claim showing the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."). Thus, the Tunistras need not give more specificity about the social media post at this juncture. Discovery is the proper phase of litigation to flesh out those details.

Gow and Bonner County next argue that Gow's social media post, as stated in the Complaint, is "both objectively true and correct as a legal matter." Dkt. 8, at 9. That is to

say, Gow's post that the Assessor's Office enters people's property all the time as part of

their job is both accurate and a legally permissible form of conduct. Therefore, they claim,

Gow should not be held liable for the social media post. In further support of this argument,

they cite and discuss Idaho law regarding tax assessor field inspections:

> "In order to promote uniform assessment of property in the state of Idaho, taxable property shall be appraised or indexed annually to reflect current market value." Idaho Code § 63-314(1). "The state tax commission shall not approve any plan that fails to provide for adequate appraisal and valuation of all taxable properties in any county." *Id.* "The term 'adequate appraisal and valuation of all taxable properties in any county' means a process which includes a *field inspection*. . . ." *Id.* at § 63-314(5) (emphasis added).
>
> According to the Idaho Administrative Code, a field inspection "will include an observation of the physical attributes of all structures which significantly contribute to the property value, the visible land amenities, and a notation of any other factors which may influence the market value of any improvements." IDAPA [r.] 35.01.03.314. In other words, the assessor must personally inspect the property and its structures.
>
> As well, "[a] person has not committed the act of civil trespass under this section for entering or remaining upon real property if the person entered or remained on the property pursuant to . . . [a] lawful authority to enter onto or remain upon the real property in question," such as a "person with a legally prescribed right to enter or remain upon the real property in question." Idaho Code § 6-202(7). Some examples of the latter provided by the legislature include, without limitation, "a meter reader in the scope and course of his employment; a postal employee delivering mail or packages; power company personnel fixing downed power lines. . . ." *Id.* at § 6-202(8). *Tax assessors at least arguably fall into this category*.

Dkt. 8, at 9–10 (emphasis added in the second instance).

Though intriguing, this argument is ultimately unpersuasive. The reasonable

inference from the allegations is that Gow was defending the two employees' entrance into

the Tuinstras' garage because Assessor's Office employees enter people's property all the

time *with or without permission or legal authority*. The cited law does not support that

proposition; rather, it at best supports only the notion that the Assessor's Office employees can enter property to carry out their job functions. The cited laws say nothing about whether that entry requires permission or other legal authority beyond the cited laws. Indeed, the last quoted sentence of Bonner County and Gow's brief admits as much. *Id.* at 10 ("Tax assessors *at least arguably* fall into this category." (emphasis added)). While the statute does not limit itself to the listed examples, tax assessor employees are not explicitly listed in those that can enter property or remain on property, nor are they similarly situated as the statute's listed exceptions. Idaho Code § 6-202(8). Each of the listed exceptions seems to contemplate a voluntary contractual relationship, an easement, or an emergency—none of which are present in this case. And, as explained below, more indicia suggest that tax assessors cannot enter private property without permission.[4]

Additionally, the statute by its very terms requires that those individuals who can enter or remain on property must do so under an "established right of entry or occupancy," "lawful authority," or "a legally prescribed right." *Id.* § 6-202(7).

Moreover, the argument opens up issues related to the Supremacy Clause. Federal constitutional provisions cannot be overcome by state law. Instead, all contravening state laws must bend to the Constitution—the supreme will of the people. U.S. Const. art. VI, cl. 2; s*ee also Selene v. Legislature of Idaho*, No. 1:21-CV-00021-DCN, 2021 WL 230040, at *6 (D. Idaho Jan. 22, 2021). This includes any state provision that violates the Fourth Amendment. In other words, even if section 6-202(8) of the Idaho Code were to say what

---

[4] *See infra* note 6.

Bonner County and Gow suggest, it is possible that that state statute would conflict with the Fourth Amendment.

While the Fourth Amendment did not originally apply to the states at the time of the Constitution's ratification, it has since been incorporated as enforceable against the states through the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *McDonald v. City of Chicago*, 561 U.S. 742, 754, 758, 761 (2010). The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). "And it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (cleaned up) (quoting *Katz v. United States*, 389 U.S. 347, 357) (1967)). So, unless tax assessments fall under an explicitly circumscribed exception, entering a garage without a warrant presents a prima facie claim of a constitutional violation.

Based on the Supreme Court's carefully carved out exceptions to the warrant requirement, only the administrative search exception seems to be even remotely applicable. *See generally Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523 (1967). Even still, this exception does not seem to apply for two simple reasons. First, the inspection schemes considered under *Camara* and similar case law are not akin to Bonner County's tax assessors. *See id.* at 535. Second, and even more importantly, rather

than bypassing the warrant requirement, the exception merely lowers the threshold for a neutral court to find probable cause. *Id.* at 538 (probable cause for administrative searches exists when "reasonable legislative or administrative standards for conducting an inspection are provided and satisfied."[5] (cleaned up)). So, if Bonner County and Gow are correct that Idaho law authorizes tax assessors to enter Idahoans' property without a warrant, and such a scheme does not fit into a warrant exception, that law would implicate the Fourth Amendment and trigger the Supremacy Clause. Yet, in this instance, it is much more likely that Idaho law does not permit tax assessors to conduct warrantless searches of property, thus eliminating any potential Supremacy Clause issue.[6]

Considering all this, if the Tuinstras sufficiently amend their complaint to assert more clearly the theory upon which they wish to proceed against Gow in a personal capacity, they are free to proceed against her. In doing so, among other things, the law requires sufficient allegations demonstrating the official caused the alleged constitutional

---

[5] Such standards are absent here, especially given that only law enforcement officers can obtain necessary search warrants under Idaho law. *Compare* Idaho Code § 19-4401; *with* Idaho State Tax Comm'n, Collection Compliance Manual 41 (2020).

[6] Based on comparable administrative provisions for Tax Commission employees, it is not likely that Idaho law empowers tax assessors to conduct assessments absent an administrative warrant or the property owners' permission. *See* Idaho State Tax Comm'n, *supra* note 4, at 40–41. "Tax commission employees when executing a tax warrant (different than search warrant) are only allowed to enter residential property and stay within the public area, without the express permission of the owner." *Id.* at 41 (cleaned up). There are two questions to consider before entering someone's property. *Id.* First, "does the individual generally have an expectation of privacy in the area that I am about to enter?" *Id.* (cleaned up). Second, "would a reasonable person generally recognize the expectation of privacy in the specific area?" *Id.* (cleaned up). It is axiomatic that property owners have a subjective and objective reasonable expectation of privacy in their garage, especially an attached garage like the one at issue in this case. A garage is merely an extension of the home and, therefore, "as much a part of their castle as the rest of their home." *United States v. Oaxaca*, 233 F.3d 1154, 1157 (9th Cir. 2000) (cleaned up). Therefore, if Tax Commission employees cannot enter private property to execute a tax warrant without implicating the Fourth Amendment, it is doubtful that tax assessors can come and go at will while conducting an assessment without explicit permission or an administrative warrant.

injury.

## C. Qualified Immunity

Relatedly, Gow and Bonner County argue that any claims against Gow must be dismissed because she is entitled to qualified immunity. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Ioane v. Hodges*, 903 F.3d 929, 933 (9th Cir. 2018). "The doctrine of qualified immunity protects government officials from liability for civil damages" under certain circumstances. *Wood v. Moss*, 572 U.S. 744, 757 (2014). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (cleaned up). The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002). First, the court must consider whether the facts show that a defendant's conduct violated a constitutional right. *Id.*; *Scott v. Harris*, 550 U.S. 372, 377 (2007). "If there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity." *Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018). Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Hope*, 536 U.S. at 736; *see also Clement*, 298 F.3d at 903 (explaining that "the issue of qualified immunity involves a two-step inquiry" and that "a negative answer" on either issue "ends the analysis, with qualified immunity protecting the

defendants from liability" (cleaned up)).

*1. Constitutional Violation*

"[W]hether a constitutional right was violated … is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). The Tuinstras allege that in April 2019, Jane Does I and II, employees of the Bonner County Assessor's Office, entered their open attached garage without seeking permission or even alerting the Tuinstras of their presence. Dkt. 1, at 4–5. Mr. Tuinstra investigated, and upon discovering public employees, he immediately asked them to leave and seek permission in the future. *Id.* at 5–6. The employees apologized and left without incident. *Id.* at 6. The Tuinstras allege that they experienced emotional distress through the employees' incursion into the garage because the Tuinstras thought that Jane Does I and II were thieves. *Id.*

While "the Fourth Amendment protects privacy in a variety of settings, in none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: the right of the people to be secure in their houses shall not be violated." *Payton v. New York*, 445 U.S. 573, 589 (1980) (cleaned up). "The Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances or other exceptions, that threshold may not reasonably be crossed without a warrant." *Id.* 590 (cleaned up). This firm line unambiguously extends to attached garages. *United States v. Oaxaca*, 233 F.3d 1154, 1157 (9th Cir. 2000).

On its face, the Complaint sets forth sufficient allegations that the actions of Jane Does I and II violated the Tuinstras' Fourth Amendment rights. The Tuinstras have a right

to be free from unreasonable government intrusion in their home. Jane Does I and II are government agents. They entered the Tuinstras' garage without permission or a warrant. The Court, therefore, holds that the Tunistras have pleaded sufficient facts to show that their Fourth Amendment rights were violated—notwithstanding shotgun pleading issues that have not put Defendants on sufficient notice of liability. The Court next looks to see if such a right was clearly established.

### 2. Clearly Established

"[T]he 'clearly established' inquiry is a question of law that only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017); To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what the official is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (cleaned up). The reasonableness inquiry is objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Although "a case directly on point" is unnecessary "for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (cleaned up); *see also Anderson*, 483 U.S. at 640 ("To conclude that the right is clearly established, the court need not identify an identical prior action."); *Hope*, 536 U.S. at 739; *Ioane*, 903 F.3d at 937 (the court "need not identify a prior identical action to conclude that the right is clearly established"); *Scott v. Cnty. of San Bernardino*, 903 F.3d 943, 951 (9th Cir. 2018)

(explaining that although the constitutional right must be clearly established, there need not be a case dealing with the particular facts to find the officer's conduct unreasonable); *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008); *Malik v. Brown*, 71 F.3d 724, 727 (9th Cir. 1995); *Browning v. Vernon*, 44 F.3d 818, 823 (9th Cir. 1995). "Clearly established law should not be defined at a high level of generality," but rather "must be particularized to the facts of the case." *Id.* at 552 (cleaned up).

A government official "cannot be expected to predict the future course of constitutional law, but the official will not be shielded from liability" for acts that violate clearly established constitutional rights. *Procunier v. Navarette*, 434 U.S. 555, 562 (1978) (cleaned up). "If the law did not put the officials on notice that their conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Clement*, 298 F.3d at 903 (cleaned up). Fourth Amendment case law on the sanctity of the home under is legion. *See, e.g.*, *Payton*, 445 U.S. at 589. The Court has already established that Jane Does I and II's actions do not fall under any warrant requirement exceptions, so it naturally follows that such actions implicated the Fourth Amendment. Consequently, the Court finds that a reasonable official would understand that entering a garage, even during a tax assessment, without permission, a warrant, or lawful authority violates citizens' rights.

Having found that the Tuinstras have pleaded sufficient facts to establish that Jane Does I and II violated clearly established Fourth Amendment rights, the Court must determine if Gow can still be shielded from liability through qualified immunity. While it is true that Gow cannot be held liable based on respondeat superior for the actions of her

employees, she could still be liable where "it is clear to a reasonable supervisor that her conduct was unlawful in the situation she confronted." *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012) (cleaned up). *Chavez*'s factual allegations are particularly instructive here. There, the Ninth Circuit refused to hold supervisors liable for alleged illegal traffic stops solely based on the plaintiffs' wholly conclusory allegations. *See id.* at 1110–12. While the *Chavez* plaintiffs alleged that the supervisors, by virtue of their positions, must have been aware of and condoned illegal traffic stops, the Ninth Circuit found no specific facts to suggest that a reasonable supervisor would have known that subordinates were engaging in unconstitutional activities. *Id.*

Here, the Tuinstras likewise allege that Gow endorsed her employees' unconstitutional actions as the final decision-making authority. Dkt. 1, at 8. Although this is similar to the pleadings in *Chavez*, the Tuinstras' allegations are not wholly conclusory. Taking the facts alleged as true, Gow publicly condoned and defended her employees' actions by asserting that "the Assessor's Office enters people's property all the time as part of their job." *Id.* Gow's open defense of her employees' actions distinguishes *Chavez* from this case. The Tuinstras have therefore pleaded sufficient facts to make their claims against Gow plausible on their face, albeit they must still rectify their shotgun pleadings if they wish to proceed with any claim. Consequently, Gow and Bonner County have not persuaded the Court that Gow is entitled to qualified immunity for the actions of Jane Does I and II, nor any other employee at this juncture.

And even if the Court were not to find a violation of a clearly established right by Jane Does I and II, Gow would still not receive qualified immunity. That is because Gow

and Bonner County's argument that Gow is entitled to qualified immunity relies on disjointed logic—their conclusion does not logically follow. Their major premise is that Gow is entitled to qualified immunity because there was not a violation of a clearly established right *of being free from governmental intrusions into citizens' garages*. *See* Dkt. 8-1, at 11. Yet, in that case, Gow's potential liability regarding her post on social media does not arise from that Fourth Amendment violation. That violation supports Jane Does I and II's potential liability. So, Gow and Bonner County have still not met their burden of showing Gow is entitled to qualified immunity in the event there was not a violation of a clearly established right by Jane Does I and II. At this juncture, Gow and Bonner County have not established that Gow is entitled to qualified immunity.

### D. *Monell* Claim

Gow and Bonner County also contend that the Tuinstras have failed to plead sufficient facts to state a failure to train *Monell* claim. The Court disagrees. To bring a § 1983 claim against a governmental entity, a plaintiff must allege: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Such a claim is considered a *Monell* claim. *See generally Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

In a *Monell* claim, a governmental entity may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *See Bd. of Cnty. Comm'rs v.*

*Brown*, 520 U.S. 397, 403 (1997). Rather, a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit, because *Monell* liability rests on the actions of the entity, and not the actions of its employees. *See Brown*, 520 U.S. at 403; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 690–91. A plaintiff must therefore show "deliberate action attributable to the municipality [that] directly caused a deprivation of federal rights." *Brown*, 520 U.S. at 415 (emphasis removed). "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." *Id.*

Here, the Tuinstras have alleged the elements of a *Monell* claim. They have alleged a violation of their constitutional rights to be free from unreasonable government intrusions into their home and retaliation for complaining about such intrusions. They have also alleged that Bonner County had a policy or custom of doing so through their allegations regarding Gow's social media posts defending the two employees, condoning their actions, and stating that the Assessor's Office enters people's property all the time as part of their job. Dkt. 1, ¶ 29. This post also fulfilled the requirement that the entity be deliberately indifferent. Lastly, the allegations demonstrate that the policy or custom of entering people's property with or without permission drives the constitutional violation.

## E. Retaliation

Lastly, there is the Tuinstras' retaliation claim. The Tuinstras' fourth cause of action alleges that, for complaining against the Tax Assessor's Office, Bonner County and Gow retaliated against them by instituting a substantial increase in property taxes. The Tuinstras

allege that it was a Fifth Amendment taking. Although the Fifth Amendment applies to the states through incorporation under the Fourteenth Amendment,[7] the Court will not address this cause of action at this juncture because of issues with shotgun pleading. Likewise, Gow and Bonner County bring up a point that may end up mooting this claim. They assert that the Board of Tax Appeals has provided the Tuinstras the relief they seek on this claim. However, this situation is outside what the Court may consider at this stage of the proceedings. *Metzler Inv. GMBH v. Corinthian Colleges, Inc*., 540 F.3d 1049, 1061 (9th Cir. 2008) ("Review is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice."). Therefore, if the shotgun pleading problem is correct, this claim survives.

### F. Leave to Amend

Although the Complaint contains seemingly meritorious allegations, the Court finds that its shotgun pleadings make it deficient and subject to dismissal. The Court nonetheless concludes that leave to amend is appropriate in this case. Dismissal without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris*, 573 F.3d at 737. Leave to amend pleadings shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Courts apply Rule 15 with extreme liberality. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted).

Here, the Tuinstras have not yet amended their pleading, have not caused undue

---

[7] *See, e.g.*, *McDonald v. City of Chicago*, 561 U.S. 742, 754, 758, 761 (2010).

delay, and have not shown any bad faith. Moreover, they very well might be able to correct the deficiencies identified in this Order. *See United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). Therefore, the Court will allow the Tuinstras to amend their Complaint, if they so wish.

## V. ORDER

The Court HEREBY ORDERS:

1. Defendants Bonner County and Gow's Motion to Dismiss (Dkt. 8) is **GRANTED**.

2. However, Plaintiffs Joseph and Amanda Tuinstra may file an amended complaint. If they choose to amend, they must file their amended complaint within 30 days of this Order. Otherwise, this case will be dismissed with prejudice and without further notice.

3. That said, Plaintiffs Joseph and Amanda Tuinstra shall not proceed against Gow in her official capacity.

DATED: June 21, 2021

David C. Nye
Chief U.S. District Court Judge